This is 242042, and we'll hear from Mr. Myers. May it please the Court, Mr. Cordova, I'm Joel Myers, and I represent Glenn Jackson. I'd like to reserve about three minutes for rebuttal, if necessary. I'm asking the Court to reverse the district court's ruling denying suppression for three reasons. First, I believe the counter was not a consensual encounter between Mr. Jackson and Agent Perry. Second, I do not believe there was probable cause to arrest Mr. Jackson after that brief encounter. And finally, that the inventory search was done for a purely investigatory purpose. Turning to the non-consensual encounter, I think it's really important to understand what was going on in the bus that day. Prior to Mr. Jackson's interaction with Agent Perry, he actually witnessed another passenger directly across the aisle from him have a similar interaction. Agent Perry approached Mr. Osorio and his usual folksy manner, which I'm sure the Court's very familiar with by this point, and asked for permission to search Mr. Osorio's bags. Mr. Osorio denied permission to search his bags. Nevertheless, he was subjected to, I think, what we'll call a self-search of those bags. And immediately after that, Mr. Osorio was placed under arrest. So that's what Mr. Jackson is seeing when he's looking two to three feet in front of him. Shortly thereafter, Agent Perry approaches Mr. Jackson, has the same level of introduction, also asks for consent to search Mr. Jackson's bags. Mr. Jackson denies the consent, not once, not twice, but a third time. Only at that point, I imagine any reasonable person in that position would have sensed that denial was futile in that situation, particularly having just seen Mr. Osorio. And then conducted, I guess, a similar type of self-search of that bag, showing items that are in the bag. And at that point, again, immediately arrested. I'll refresh my memory. Did the witness, or did the person sitting across from Mr. Jackson, did he allow, he did the self-search too? That's correct, Judge Murphy.  But what you have to show is that there was something that Perry did that was compulsive to the fellow who was sitting across from Jackson that was replicated or that Jackson feared would be replicated in his case. What was that compulsive action by Perry? I mean, again, we're dealing with a small area. I know that courts have said, you know, buses, it's still fine to conduct that search. But it's the quickness and the speed within which this, I guess, the acquiescence to Agent Perry's demands took place, particularly in light of the initial denial. May I search your bag? Mr. Osorio clearly said no. Nevertheless, Agent Perry persists and continued to persist. With respect to Mr. Jackson, he persisted even further than he did with Mr. Osorio until Mr. Jackson relented. We don't know how far along Mr. Perry would have done and continued. Well, Perry was saying, can I search? Can I search? Can I search? And everybody said no. So what's the compulsion? But nevertheless, like, it turned out that it happens, right? And Mr. Osorio ends up being arrested. Mr. Jackson witnesses that being arrested. I'm a reasonable person in that situation is going to think that the same fate will befall him. The arrest was immediate and I believe not based upon probable cause. All that Agent Perry was able to testify at the suppression hearing was that he saw, you know, I guess, some bulges in clothing and a tiny portion of clear plastic. Agent Perry's testimony itself was equivocal as to what could have been in any of those packages. We had a very long... He did testify that he's never seen that type of wrapping that didn't ultimately turn out to be wrapping around illegal drugs. Didn't he testify to that? He has seen it either in drugs or proceeds. What he called proceeds, I guess. Either of which are pertinent to look for. I guess they could be, but I think proceeds is a lot more of a conclusion that would have more facts would be needed to determine. And we spent a long time at the suppression hearing kind of parrying back and forth with what Agent Perry would describe as what proceeds would be. Money itself is not proceeds. I mean, people can travel across this country with money wrapped in however they want. A determination of whether or not it's proceeds. Well, what about when you combine that with him having the identification? There was a problem with his false identification, correct? It wasn't false identification, Your Honor. The identification was correct, but he was traveling under a different name. He had an electronic ticket. So he bought a ticket under false precedence. I mean, I guess we could assume that, or maybe he was given a ticket from somebody else. The point is, I think, Your Honor, it's clear. He did have a ticket in another person's name. However, he did present to Agent Perry identification in his own name. Agent Perry did testify at the suppression hearing that there's no rule on the Greyhound buses in traveling that a person has to be traveling in their own name. There's nothing further on the record to demonstrate why he was traveling under a different name, had someone given him a ticket or otherwise. But, you know, he did, well, he didn't provide a false name. Didn't he say, Jackson, say that the only thing in this black bag is clothing? Correct. And so when he's doing the self-search, that indicates that that's not true. There were other things. Whatever this, these objects were wrapped in plastic. Well, certainly we know that now. It's hard to, it's hard to argue that there were not drugs in the two bags that Mr. Jackson had. That's not my question. My question is, Jackson says there's nothing in this bag but clothes. Correct. And he's shuffling things around, indicates that's not true. There are things in there other than clothes. Agent Perry was able to testify there was, that he witnessed a bulge in the bag, could not know what it was, in his experience. In the plastic. And the tiny portion of plastic, correct. And I would even go so far as to concede that if anything, that Agent Perry may have had probable cause to seize the bag and then apply it for a search warrant. But not necessarily probable cause to arrest Mr. Jackson, because that's what created this whole problem. So what is the analytical distinction? So if you have probable cause to seize, doesn't that imply that there is a fair probability that that duffel bag contains contraband? Or let me ask you a more general question. So if you are conceding that there's probable cause to seize the duffel bag, why? What is the basis for your concession? OK. I said I would almost go so far as to concede.  I certainly would not concede. But if that was the case, I still think the Fourth Amendment would require at that point Agent Perry to go secure a warrant to search the bag itself. However, what happens here, it kind of end runs the Fourth Amendment's protections here. So we have a situation where Agent Perry finds something, arrests the person, doesn't really know what he could charge the person for. I think everybody would have to concede that. We have no idea, until that bag is ultimately searched, what Mr. Jackson could have been charged with. Well, I know you said that in your brief, but I want to make sure that I understand specifically. I assume it's possession of a controlled dangerous substance. Is your argument, we don't know what the controlled dangerous substance is? Also, it's not even just my argument. Based upon Agent Perry's testimony alone, it could have been proceeds, right? Or it could have just been money. It did not necessarily have to be a controlled substance. So if there was probable cause to believe that he has committed A, B, or C, possession of a controlled dangerous substance or proceeds of the distribution of a controlled dangerous substance, we just don't know which one it is, are you saying that evidence should be suppressed because there was probable cause to believe that one of two or three crimes existed, but we don't know which crime it was? And I'm not trying to pick on you or ask you a trick question, but I just kind of want to drill down on exactly what your argument is. No, and I'm sorry if I was unclear about it. No, it's nothing bad. Thank you. Okay. I don't know what the crime would be for possession of proceeds in and of itself. I don't think that in and of itself is a crime. Perhaps it could be... Has to be distribution. Well, I mean, conspiracy, I imagine. If I own marijuana, well, I don't have any money and let's just sell it. Right. Understood. But then when you're left with money and faced with what Agent Perry had there, if it was money, what other information would Agent Perry have had how that money was generated? I'm not trying to ask you questions. Testimony was that, based on my experience, that there are usually two things that are in this type of packaging, and that is the drugs or the proceeds, not just plain old everyday money, but money that were proceeds from the sale of illegal drugs. I mean, that was Agent Perry's conclusion that he was saying it could have been proceeds. When asked to explain how something is proceeds and how you can prove proceeds, it was less than clear in his testimony during the suppression hearing. He had no way to look at money, no matter how it's wrapped, and determine whether or not it's proceeds. What if it's wrapped, as he saw, and the person who owns the black duffel bag lies about what is in the bag? Isn't that enough to push it over the brink? Again, I still would find it would be hard to determine at that point until you actually find out what the substance is, what to charge somebody with. So that's why I was making somewhat of an attempt. I'm sorry, Judge. Let me ask you this then. Sure. Isn't the standard of review such that we view the evidence in the light favorable to upholding whatever the order of the district court was, which in this case was do not have the motion suppressed? So in light of that standard of review, don't we have to look at Perry's testimony as if the proceeds were proceeds from illegal drugs? Okay. Agent Perry wasn't able to conclude that they were proceeds of illegal drugs. That would be first of all. But to answer the court's question directly, I believe the standard of review is, with respect to factual issues, clearly erroneous. With respect to the reasonableness under the Fourth Amendment, that would be de novo here. And what I'm trying to at least argue to this court is that the warrantless search in this case, which we all agree was a warrant. But in analyzing clearly erroneous, you apply the standard of viewing the evidence in the light most favorable to upholding the district court's order. True. Yes. Thank you. Yes. I would like to just jump kind of to the last part. So hopefully I'll have some time left for rebuttal. The case is distinguishable from Johnson, which I think is important. Johnson was kind of a very factually similar case that this court decided in 2022, kind of causing the government to change and pivot their presentation, particularly in this case to rely on what they're calling the inventory search. The factual differences, and in Johnson this court decided that there was probable cause to arrest. I will demonstrate, I think, certain factual distinctions between Mr. Jackson, the case we have before the court now, and Johnson. In Johnson, there was clear consent in order to allow the search to take place, unlike here. Mr. Johnson was traveling under a false name without identification. Agent Perry in the Johnson case had more visual identification of the specific bundle. In Johnson also there was an attempt by Mr. Johnson, unlike Mr. Jackson, to distance himself from the bags themselves. Mr. Johnson, unlike Mr. Jackson, lied about luggage that he had. And then also during the course of that self-search, Mr. Johnson engaged in attempts to  Those were the facts that this court decided led to probable cause. None of those are in existence here with respect to Mr. Jackson. Shopping bag, but he didn't, he said, you know, are these yours? And he said, yeah, the shopping bag is, but he didn't identify that duffel bag. I don't think he made a distinction between the two bags, because the shopping bag, I think as the court would recall, the shopping bag was resting on top of the bag. He never denied that the black duffel bag was his as well. But he didn't. Fair point. Good point. But he, on the other hand, one could argue that, well, he didn't say, yeah, the shopping bag and the duffel bag. He certainly didn't say those two things. But when asked to perform the self-search, he was making no distinction about the two bags and wasn't trying in any way, at least as far as the record to obscure that. So here's what happened. So they arrest somebody. They don't know what they're arresting somebody for. And I certainly will concede, as I must, that DEA has a policy, an administrative policy to conduct an inventory search once items are in their care. But to sanctify this, to arrest somebody, and only put the items in their care because of this arrest, and then to conduct an inventory, I think would erode what limited protections the Fourth Amendment seems to have. And that is all my time. So I will not be back for a rebuttal. But thank you all very much. I appreciate the questions. OK, thank you. OK, we'll hear from Mr. Cordova.  May it please the court, my name is Patrick Cordova. I represent the appellee of the United States. Special Agent Perry boarded a bus. He asked for and received permission to speak with Jackson. And over the course of an approximately three and a half minute interaction, asked to see the contents of a duffel bag, which revealed bundles wrapped in clothing and a small portion of vacuum-sealed plastic. Now, having already learned that Mr. Jackson was traveling under a false name to and from a place he didn't live, had failed to identify all of his luggage when asked, and denied that anything was in his duffel bag despite what Agent Perry could see, Agent Perry arrested him. And a later inventory search revealed narcotics. So all of Agent Perry's conduct was permissible. And we would ask this court to affirm the district court's conclusion that the encounter was consensual, that Jackson's conduct voluntary, that there was probable cause, and that the inventory search was permissible. So I'm happy to either address all those in order or answer any questions if you have any right off the bat. Well, why don't you start with the search, whether it was consensual. Could you respond to opposing counsel's argument that the defendant here was just worn down? Yes. I mean, it questioned repeatedly. You kind of know, and having observed what happened across the way, he was just worn down. So I think there's plenty of guidance on this specific fact pattern. So the first is Drayton, USP Drayton. That's a Supreme Court case from 2002. And the facts are substantially similar. In that case, the defendant, Mr. Drayton, saw another individual get arrested. And there the court found that, look, the arrest of one person doesn't mean that everybody on a bus was seized. And then as far as more than one question, well, that has also been presented to this court in USP Ramos Busiaga. That's an unpublished case from 2020. But there, Agent Perry asked to search twice and then eventually asked the defendant to open up her bag and show him what's inside. She did. And there this court found that there was no involuntary consent there. A similar case, USP Zubia Melendez. That's a 2001 Tenth Circuit case. There the officer asked to search a car. The defendant replied, no, never. And the officer asked again, hey, can I search the car? And they said, sure. Again, they found, this court found that was OK. And I think the important distinction is, was there a change in the environment created by the officer from the first time he asked to the second time? And if you look at the facts. The change is, I'm not going to give up. If you tell me no, I'm going to ask again. Isn't that the change? Well, the facts here are a little bit more nuanced than that. Agent Perry asked to search. He doesn't hear an answer. So he asks again and the defendant says no. So that fact right there shows that he doesn't feel coerced. So he asked him twice. He asked him twice. He's already over. The next one is going to be over the two limit. Well, the third is a different question. He says, OK, if you're not going to let me search it, would you be willing to open it up and show me what's inside? And that's, he consents to that. And isn't inherent in that, is it, I'm not leaving until you let me look at your stuff. I don't think so. And, you know, we have the, we have those specific facts. The district court analyzed whether or not that was coercive. It's finding is it was not. You know, your question is, is there a certain number of times that someone could be worn down? And I would submit there are, but that's not this case. Well, maybe you can tell us what, what is that number? I wouldn't want to.  Well, I think you need to look at the facts of each case. And here, not only does Agent Perry, you know, not only does, I'm sorry, does Jackson say, no, you can't search. But Agent Perry affirms. He says, and that's your right. He tells Jackson, you have the right to do that. So we ask a different, more limited question. And as I pointed out, there have been instances where officers have asked repeated numbers of times to search. And this court has found that it wasn't coercive. And I think the only thing that has changed is he's just asked a different question. And I don't think that tips the scales to making it an overly coercive environment. So, and the other thing I'd like to point out. So I actually want to jump to probable cause here. So one of the things I'd like to point out is there was some discussion with Mr. Myers about, is this proceeds? What are proceeds? Well, Agent Perry was clear about what he thought it was. He testified that he, quote, believed he had illegal narcotics concealed inside of his clothings, inside of that clear heat sealed plastic. And he testified later, I thought it was bundles of illegal narcotics. I didn't think it was proceeds. So the distinction in his testimony is this. He says, look, I've seen this situation hundreds of times. And in all those occasions, it was either narcotics or proceeds. But what he goes on to later explain is that in this case, I thought it was narcotics. And he provides all of his testimony as to why each individual factor led him to believe that Jackson was trafficking narcotics. What were those things? Well, let me ask more limited. Did any of the things he testified to as to why he leaned towards narcotics versus proceeds, based on his observation? I mean, did he see a white powdery substance? So he certainly didn't see the contents, but he said it was based off of the totality. And he explained part of the reason was because of where he was traveling. And his experience going from West Coast East was generally indicative of narcotics rather than proceeds. That was his explanation. But he certainly believed it was narcotics. Because he was going from the West Coast to the East Coast? Yes, from California to Atlanta or to Georgia, outside of Atlanta. So if you're going from Atlanta to California, it's probably proceeds? Well, he wasn't asked about that. We don't have that in the record. But that was one of the things he based it off of. He thought it was narcotics. He didn't think it was proceeds. And he was clear about that when pressed by Mr. Myers at the suppression hearing. And as far as what Mr. Jackson was arrested for, it was suspected possession of narcotics. Agent Perry testified he was arrested for, quote, the suspected bundles inside the duffel bag. And it's not just probable cause. It isn't just what he saw. It's everything that he knew by the time he saw it. So he knew that Mr. Jackson was traveling under a name that wasn't his. He knew that he was traveling to and from a place he didn't live. He knew that Jackson had failed to identify all of his luggage when asked. And what also went into it is how Mr. Jackson conducted the self-search. He positioned himself such that Agent Perry couldn't see what was going on. And Agent Perry testified that in his experience, that is indicative of someone that's trafficking. And then you also obviously have the bundles inside or the bulges inside of the clothes, the heat-sealed plastic, and Mr. Jackson's denial that nothing's in there when asked. So that's definitely, I believe, more than what was present in U.S. v. Johnson, where this court found that there was indeed probable cause. So certainly if there was probable cause to arrest, there was probable cause to seize the luggage. Now, going back to the nature of the encounter, whether or not it was consensual, certainly U.S. v. Dryden speaks to that issue. Again, that's a Supreme Court case. There, there were three officers on a bus. They had concealed weapons, visible badges. But just like here, there was no use of force, no intimidating movement, no overwhelming show of force, brandishing of weapons, blocking of exits, commands, or an authoritative tone of voice. Those are all facts that the district court found, and they're certainly not clearly erroneous. So there was certainly a consensual encounter here. So last, I want to touch on the inventory search. So there's two things that this court needs to decide. One, was there an inventory policy in place that was followed? And two, was the purpose of the inventory policy to create an inventory, a list of items, of personal items? And the district court found that yes, it's to both. Certainly, Agent Perry followed DEA's written inventory policy, and he created an inventory of items that wasn't drugs, obviously, and those items were returned to Jackson's attorney. So as far as bad faith, the burden was on Jackson to show bad faith, and the district court found that there was zero evidence on the record before it of bad faith. And we don't believe that that finding was clearly erroneous, and there would be no reason to find bad faith here. There's just simply no evidence of it. So unless the court has any further questions, I'll see the remaining time. Thank you. Thank you. Amy, does he have any rebuttal time? He has none. He's over. He's over, okay. Thank you, counsel. Well submitted. We'll take this under advisement.